DYK, Circuit Judge,
dissenting.
Despite the majority’s extensive and sophisticated analysis, I respectfully suggest that it has reached the wrong result in holding that the claims are time barred. In my view, the majority’s approach to statutory construction directly conflicts with the approach required by the Supreme Court’s decision in F.C.C. v. Nextwave Personal Communications, Inc., 537 U.S. 293, 123 S.Ct. 832, 154 L.Ed.2d 863 (2003).
The Byrd Amendment itself establishes no time limit for the filing of claims. 19 U.S.C. § 1675c(d) (2000). A Customs Regulation establishes a 60-day time limit, providing that “each affected domestic producer must submit a certification ... that must be received within 60 days after the date of publication of the notice in the Federal Register.” 19 C.F.R. §§ 159.62-63 (2004). Here the claimants did not file within the 60-day period. Like the majority, I think that this 60-day time limit is generally valid. However, where, as here, Customs has failed to provide the statutorily required notice of eligibility to affected domestic producers, I think the time limit cannot be enforced.
The plain language of the Byrd Amendment requires notice to affected domestic producers of their eligibility, specifying that Customs must publish “a notice of intention to distribute the offset and the list of affected domestic producers potentially eligible for the distribution based on the list obtained from the Commission.” 19 U.S.C. § 1675c(d)(2) (emphasis added). In those cases where “the Commission’s records do not permit an identification of those in support of a petition,” the statute imposes an affirmative duty on the International Trade Commission (“ITC”) to “consult with the administering authority to determine the identity of the petitioner,” when compiling the list of affected domestic producers. 19 U.S.C. § 1675c(d)(l). Customs is also required to “request a certification from each potentially eligible affected domestic producer.” *1373 19 U.S.C. § 1675c(d)(2).[1] The language of the Byrd Amendment thus requires that the published list provide notice to all potentially eligible affected domestic producers so that they can then comply with the mandatory certification procedures.
In concluding that the Byrd Amendment does not require notice to all potentially eligible producers, the majority affords Skidmore deference to the ITC’s interpretation of the statute as not requiring such notice. Skidmore v. Swift & Co., 323 U.S. 134, 139-40, 65 S.Ct. 161, 89 L.Ed. 124 (1944). But, even under the more deferential standard of Chevron, deference to an agency interpretation is only required if the statute is ambiguous. Chevron U.S.A. Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The majority makes no real effort to show that the Byrd Amendment is ambiguous; and, of course, it is not.
At the end of the day, the majority justifies its result by finding that section 777 conflicts with the Byrd Amendment. But there is no conflict. Section 777 of the Tariff Act of 1930, 19 U.S.C. § 1677f, prohibits disclosure of information “designated as proprietary by the person submitting the information” absent consent. 19 U.S.C. § 1677f (b)(1)(A) (2000). The plain language of section 777 does not require that the identity of affected domestic producers who supported anti-dumping petitions be kept confidential unless confidentiality was waived. Much less does it require that these names be kept confidential when the Byrd Amendment requires their disclosure. The supposed conflict with the Byrd Amendment arises solely because the ITC has interpreted section 777 to protect the identity of the supporting parties even in those situations where the Byrd Amendment requires disclosure. The majority defers to that interpretation under Chevron and finds that the Byrd Amendment must give way. In other words, the" majority reaches the somewhat astonishing conclusion that the agency’s interpretation of section 777 impliedly takes precedence over the explicit provisions of the Byrd Amendment. Maj. Op. ante at 1364-65.
By allowing an agency interpretation of section 777 to trump the plain language of the Byrd Amendment, the majority contravenes this court’s obligation to interpret the ambiguous language of section 777 so as to accommodate the explicit notice requirement of the Byrd Amendment.
In the Nextwave case, the Supreme Court held in similar circumstances that the explicit command of the Bankruptcy Code overcame the agency’s interpretation of the Communications Act. 537 U.S. at 304, 123 S.Ct. 832. The question was whether the agency could properly cancel auctioned licenses for failure to make timely payment. Contrary to the majority’s claim that the case involved the construction of a single statute, Maj. Op. ante at 1368, Nextwave also involved a potential conflict between two statutory provisions. The Court noted the express language of Section 525 of the Bankruptcy Code, that a “governmental unit may not revoke a license to a person that is a debtor under this title solely because such debtor has *1374 not paid a debt that is dischargeable in the case under this title,” 537 U.S. at 300, 123 S.Ct. 832, (quoting 11 U.S.C. § 525(a) (2000) (ellipses omitted)), and held that nothing in the relevant section of the Communications Act, 47 U.S.C. § 309(j), compelled automatic cancellation of a license for failure to meet payment deadlines, id. at 304, 123 S.Ct. 832. The agency’s interpretation of the Communications Act to require cancellation could not prevail because “[s]uch administrative preferences cannot be the basis for denying respondent rights provided by the plain terms of a law.” Id.
So here, we have a situation where the Byrd Amendment is explicit; and section 777 contains no explicit requirement of confidentiality as to the identity of persons supporting antidumping petitions. The Byrd Amendment’s explicit notice requirement cannot be defeated by an “administrative preference” for interpreting section 777 to require confidentiality in such circumstances. None of the courts of appeals cases cited by the majority found an implied repeal of a statutory command based on a Chevron interpretation of a second statute. Maj. Op. ante at 1368-69 n. 1.[2]
The majority’s reliance on Traynor v. Turnage, 485 U.S. 535, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988), is further manifestation of its failure to appreciate that an agency’s policy-driven interpretation under Chevron cannot override the clear command of a conflicting statute. Traynor did not involve Chevron deference to the YA’s interpretation of section 1662(a)(1) to include primary alcoholism as “willful misconduct,” but rather an explicit holding that the statute itself incorporated a previously rendered agency interpretation to that effect.[3] Under these circumstances the Court gave primacy to the explicit Congressional intent manifested in section *1375 1662(a)(1) as opposed to the more general provisions of the Rehabilitation Act, finding that, the latter legislation neither “implicitly repealed the willful misconduct provision of the 1977 legislation [nor] forbade the VA to classify primary alcoholism as willful misconduct.” Id. at 547, 108 S.Ct. 1372. Here, the agency interpretation of section 777 was not incorporated into the statute, and can claim only Chevron deference. That is not sufficient to override the commands of the Byrd Amendment.
If the required notice was not provided, the agency cannot enforce the time limit. See Wood v. Office of Pers. Mgmt., 241 F.3d 1364, 1366 (Fed.Cir.2001) (refusing to deny annuity benefit when statutorily required notice was not provided, even though employee had not formally elected the benefit during the prescribed time period). Here, the statutorily required notice was not provided, and the time limit cannot be enforced.

. In order to obtain a distribution, the certification must include: a statement of the producer’s desire to receive a distribution; demonstration of their eligibility to receive the distribution as an affected domestic producer; and the qualifying expenditures incurred by the producer during the relevant distribution period. 19 U.S.C. § 1675c(d)(2); see also 19 C.F.R. § 159.63(a).

. In two of the cited cases, the agency-adopted an interpretation of an ambiguous statute to avoid a conflict with another explicit statutory command. See Mowbray v. Kozlowski, 914 F.2d 593, 600-01 (4th Cir.1990) (agency interpretation of section 303(3) of the Medicare Catastrophic Coverage Act avoided potential conflict with section 209(b) of the Supplemental Security Income Program. 42 U.S.C. §§ 1381 et seq.); Rembold v. Pacific First Federal Savings Bank, 798 F.2d 1307, 1310 (9th Cir.1986) (agency interpretation of the National Housing Act’s judicial review provisions avoided conflict with the explicit grant of district court jurisdiction provide under the antifraud provisions of the Security Exchange Act of 1934). Under the logic of those cases, the agencies should interpret section 777 to prevent a conflict with the Byrd Amendment. In the third case, the court found that an agency interpretation of one statute was permissible because it did not conflict with an explicit command of the second statute. Beckert v. Our Lady of Angels Apartments, Inc., 192 F.3d 601, 607 (6th Cir.1999) (agency interpretation of funding mechanism and implementation standards of § 202 of the National Housing Act was found to create no conflict with the general prohibitions against discrimination contained in the Fair Housing Act Amendments of 1988).

. As the Court noted:
[W]e must assume that Congress was aware of the Veterans’ Administration’s interpretation of "willful misconduct" at the time that it enacted § 1662(a)(1), and that Congress intended that the term receive the same meaning for purposes of that statute as it had received for purposes of other veterans’ benefits statutes.... In these cases, however, we need not rely only on such assumptions. The legislative history confirms that Congress intended that the Veterans’ Administration apply the same test of "willful misconduct” in granting extensions of time under § 1662(a)(1) as the agency already was applying in granting disability compensation .... Specifically, the [Senate Report] states:
"In determining whether the disability sustained was a result of ... 'willful misconduct,’ the Committee intends that the same standards be applied as are utilized in determining eligibility for other VA programs .... In this connection, see 38 *1375 CFR, part III, paragraphs 3.1(n) and 3.301, and VA Manual M21-1, section 1404." S.Rep. No. 95-468, pp. 69-70 (1977) [U.S.Code Cong. & Admin.News 1977, pp. 3747, 3805, 3806].
The cited regulations ... characterize[ ] primary alcoholism as "willful misconduct.”
Traynor, 485 U.S. at 546, 108 S.Ct. 1372 (some internal citations omitted).