Philip R. KARN, Jr., Plaintiff,

v.

U.S. DEPARTMENT OF STATE,
and Thomas B. McNamara,
Defendants.

Civil Action No. 95–01812 (CRR).

United States District Court,
District of Columbia.

March 22, 1996.

Kenneth C. Bass, III and Thomas J. Cooper, Attorneys, Venable, Baetjer, Howard & Civiletti, L.L.P., Teresa Dondlinger Trissell, of counsel, Washington, D.C., for Plaintiff.

Anthony J. Coppolino, Trial Attorney, Vincent M. Garvey, Deputy Branch Director, Eric. H. Holder, United States Attorney, and Frank W. Hunger, Assistant Attorney General, all of the U.S. Department of Justice, Washington, D.C., for Defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

This case presents a classic example of how the courts today, particularly the federal courts, can become needlessly invoked, whether in the national interest or not, in litigation involving policy decisions made within the power of the President or another branch of the government. The plaintiff, in an effort to export a computer diskette for profit, raises administrative law and meritless constitutional claims because he and others have not been able to persuade the Con-

gress and the Executive Branch that the technology at issue does not endanger the national security. This is a "political question" for the two elected branches under Articles I and II of the Constitution.

The case arises out of the defendants' designation of the plaintiff's computer diskette as a "defense article" pursuant to the Arms Export Control Act (AECA), 22 U.S.C. §§ 2751–2796d, and the International Traffic in Arms Regulations (ITAR), 22 C.F.R. §§ 120–130. The plaintiff alleges that the defendants' designation of a diskette containing source codes for cryptographic algorithms[1] as a defense article subject to the export controls set forth in the ITAR, when the defendant deemed a book containing the same source codes not subject to said export controls, is arbitrary and capricious and an abuse of discretion in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A). The plaintiff also raises a number of constitutional claims. Specifically, the plaintiff alleges that the defendants' regulation of the diskette violates the plaintiff's First Amendment right to freedom of speech and arbitrarily treats the diskette differently than the book in violation of the plaintiff's Fifth Amendment right to substantive due process.

The defendants move to dismiss the plaintiff's APA challenge based on a provision in the AECA precluding the judicial review of the designation of items as defense articles subject to the AECA. The defendants move for summary judgment on the ground that the plaintiff's First Amendment and Fifth Amendment rights have not been violated by the defendants' regulation of his computer diskette under the AECA and the ITAR.

Upon consideration of the filings by the parties, the entire record herein, the applicable law thereto, and for the reasons set forth below, the Court shall grant the defendants' Motion to Dismiss the plaintiff's APA claim as nonjusticiable, and the Court shall grant the defendant's Motion for Summary Judgment with respect to the plaintiff's First and Fifth Amendment claims.

## BACKGROUND

On February 12, 1994, the plaintiff submitted to the Department of State a commodity jurisdiction request[2] for the book *Applied Cryptography,* by Bruce Schneier. The book *Applied Cryptography* provides, among other things, information on cryptographic protocols, cryptographic techniques, cryptographic algorithms, the history of cryptography, and the politics of cryptography. Part Five of *Applied Cryptography* contains source code for a number of cryptographic algorithms. This first commodity jurisdiction submission did not include "machine-readable media" such as a computer diskette or CD–ROM. Lowell Dec., Tab. 4.

On March 2, 1994, in response to the plaintiff's commodity jurisdiction request, the Department of State's Office of Defense Trade Controls (ODTC) determined that the book is not subject to the jurisdiction of the Department of State pursuant to the ITAR. Joint St. ¶ 4. The ODTC's response explicitly stated, however, that this determination did not extend to the two diskettes referenced in the book and available from the author—said disks apparently containing the encryption source code printed in Part Five of *Applied Cryptography.* Joint St. ¶ 5.

On March 9, 1994, the plaintiff submitted a commodity jurisdiction request for a diskette

---

1. "Cryptography" is "the art and science of keeping messages secure ... [, and] the process of disguising a message in such a way as to hide its substance is called encryption." Bruce Schneier, *Applied Cryptography,* at 1 (1994). A "cryptographic algorithm" is a mathematical function or equation that can be applied to transform data into an unintelligible form (*e.g.,* into ciphertext). Joint St. ¶ 15. "Cryptographic source code" expresses a cryptographic algorithm in computer programming language, such as the "C" language, and is a precise set of operating instructions to a computer that, when

compiled into object code by using commercially available software, enables a computer to perform cryptographic functions. Joint St. ¶¶ 16.

2. Parts 120 and 121 of the ITAR provide a "commodity jurisdiction" procedure so that an exporter may obtain a determination whether the export of an item falls within the jurisdiction of the Department of State pursuant to the ITAR, or the Department of Commerce pursuant to the Export Administration Regulations. *See* 22 C.F.R. §§ 120.4 and 121.1, category XIII(b)(1), Note.

containing the source code printed in Part Five of *Applied Cryptography* (the "Karn diskette"). The request stated that "the diskette contains source code for encryption software that provides data confidentiality" and that "the software on this diskette is provided for those who wish to incorporate encryption into their applications." Joint St. ¶ 7. The ODTC responded, stating that the Karn diskette is subject to the jurisdiction of the Department of State pursuant to the ITAR and the AECA because the diskette "is designated as a defense article under category XIII(b)(1) of the United States Munitions List." Joint St. ¶ 8; Lowell Decl. ¶ 15, Tab 9.

Pursuant to procedures set forth in 22 C.F.R. § 120.4(g), the plaintiff appealed the commodity jurisdiction determination concerning the source code diskette to the Deputy Assistant Secretary of State by letter dated June 10, 1994. Joint St. ¶ 9. The Deputy Assistant denied the plaintiff's appeal by letter dated October 7, 1994. Joint St. ¶ 10. The plaintiff appealed this denial to the Assistant Secretary of State for Political–Military Affairs, defendant Thomas McNamara, by letter dated December 5, 1994. Defendant McNamara denied the plaintiff's appeal on June 13, 1995, reaffirming the earlier determinations that the Karn diskette "contains cryptographic software [and] is designated as a defense article under Category XIII(b)(1)." Joint St. ¶ 12; Lowell Decl. ¶ 22, Tab 14.

The plaintiff filed his Complaint in this Court on September 21, 1995, and the defendants filed their Motion to Dismiss or, in the Alternative, for Summary Judgment on November 15, 1995, containing the declarations of William P. Crowell, Deputy Director of the National Security Agency, and William J. Lowell, Director of the Office of Defense Trade Controls, Bureau of Political–Military Affairs, Department of State. The plaintiff filed an Opposition thereto on December 11, 1995, including the declarations of Barbara Tuthill, a Secretary at Venable, Baetjer & Howard, Philip R. Zimmerman, a software developer, and plaintiff Philip R. Karn, Jr. The defendants Replied on December 18, 1995. The plaintiff filed a Supplemental Memorandum on December 22, 1995, containing the supplemental declaration of plaintiff Karn, in order to correct alleged misstatements made by defendants. The defendants filed a Response on January 16, 1996.

## I. THE COURT SHALL DISMISS THE PLAINTIFF'S APA CHALLENGE TO THE DEFENDANTS' DESIGNATION OF THE PLAINTIFF'S DISK AS A "DEFENSE ARTICLE" BECAUSE THE ARMS EXPORT CONTROL ACT PRECLUDES JUDICIAL REVIEW.

### A. Pursuant to AECA, The President Designated The Karn Diskette As A "Defense Article" Subject To Export Regulation Under The ITAR.

The AECA authorizes the President to control the export of "defense articles":

> The President is authorized to designate those items which shall be considered as defense articles and defense services for the purposes of this section and to promulgate regulations for the import and export of such articles and services. The items so designated shall constitute the United States Munitions List.

22 U.S.C. § 2778(a)(1). The President delegated this authority to the Secretary of State, who then promulgated the ITAR. *See* 22 C.F.R. § 120.1(a).

The ITAR contains 10 subparts, including "Purpose and definitions," contained in Part 120, and "The United States munitions list," contained in Part 121.[3] Part 121, containing the munitions list, describes those items designated "defense articles" by the Secretary of State. The descriptions of such defense articles do not include specific manufacturer names or highly-detailed descriptions, but instead contain relatively general descriptions, such as the following: "Military tanks, combat engineer vehicles, bridge launching vehicles, half tracks and gun carriers";[4] "Mili-

---

**3.** Other subparts address the registration of exporters, the licensing of exporters, general policies and procedures, and violations and penalties.

**4.** *See* 22 C.F.R. § 121.1, category VII(b).

tary training equipment including but not limited to attack trainers, radar target trainers ... and simulation devices related to defense articles";[5] "Body armor specifically designed, modified or equipped for military use ...";[6] and "Radar systems, with capabilities such as (i) Search, (ii) Acquisition, (iii) Tracking...."[7] Likewise, the munitions list specifically addresses cryptographic systems and components and includes the following description:

> (b) Information Security Systems and equipment, cryptographic devices, software, and components specifically designed or modified therefor, including: (1) Cryptographic ... systems, equipment, assemblies, modules, integrated circuits, components or software with the capability of maintaining secrecy or confidentiality of information or information systems....

22 C.F.R. § 120.4, category XIII.

Part 120 of the ITAR provides assistance for interpreting the terms used in the munitions list. The "commodity jurisdiction procedure" is explained and provided for in this definitional section, and the ITAR directs that the ODTC use the procedure "if doubt exists as to whether an article or service is covered by the U.S. Munitions List." 22 C.F.R. § 120.4. As set forth previously, the plaintiff requested the use of this procedure for the book and the diskette. The ODTC determined that the diskette was covered by the munitions list but that the book was not.

The plaintiff argues that the diskette, like the book, is not a "defense article" covered by the munitions list. The plaintiff contends that pursuant to sections 125.1[8] and 120.11,[9] the diskette is in the "public domain" and therefore is not subject to the ITAR. *See* Plaint's Opp. 19–21. However, the defendants contend that the diskette does not fall within the "public domain" exemption because said exemption only applies to "technical data" which, according to the defendants, does *not* include cryptographic software. *See* Defs' Reply 21–22 (citing 22 C.F.R. §§ 120.10(a)(4),[10] 120.11 and 121.8(f)[11]).

**B. Section 2778(h) Of The Arms Export Control Act Precludes Judicial Review Of The Designation Of The Karn Diskette As A "Defense Article."**

The AECA explicitly bars judicial review of the President's designation of an item as a defense article:

> The designation by the President (or by an official to whom the President's functions under subsection (a) of this section have been duly delegated), in regulations issued under this section, of items as defense articles or defense services for purposes of this section shall not be subject to judicial review.

22 U.S.C. § 2778(h). The plaintiff argues, however, that the Court should construe this provision so narrowly as to cover only the act of listing items on the munitions list contained in Part 121 of the ITAR and not the determination whether an item, in this case the plaintiff's diskette, is actually covered by the language of the munitions list pursuant

---

**5.** *See id.,* category IX(a).

**6.** *See id.,* category X.

**7.** *See id.,* category XI.

**8.** 22 C.F.R. § 125.1 provides:

(a) The controls of this part apply to the export of technical data and the export of classified defense articles. Information which is in the public domain (see § 120.11 of this subchapter and § 125.4(b)(13)) is not subject to the controls of this subchapter.

**9.** 22 C.F.R. § 120.11 provides:

(a) Public domain means information which is published and which is generally accessible or available to the public....

**10.** 22 C.F.R. § 120.10 provides:

(a) *Technical data* means, for purposes of this subchapter: ... (4) Software as defined in § 121.8(f) of this subchapter directly related to defense articles.

**11.** 22 C.F.R. § 121.8(f) provides:

*Software* includes but is not limited to the system functional design, logic flow, algorithms, application programs, operating systems and support software for design, implementation, test, operation, diagnosis and repair. A person who intends to export software only should, unless it is specifically enumerated in § 121.1 (e.g., XIII(b)), apply for a technical data license pursuant to part 125 of this subchapter.

**6**

to the definitional provisions contained in Part 120 of the ITAR. The plaintiff bases this argument upon the presumption in favor of judicial review and the language of § 2778(h) when read in conjunction with § 2778(a) of the AECA.

■ It is often stated that there is a presumption in favor of judicial review of agency action absent "clear and convincing evidence" of legislative intent to preclude it. *Bowen v. Michigan Acad. of Family Phys.*, 476 U.S. 667, 671, 106 S.Ct. 2133, 2136, 90 L.Ed.2d 623 (1986). However, the Supreme Court has cautioned that this standard "is not a rigid evidentiary test but a useful reminder to the courts that, where substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling." *Block v. Community Nutrition Inst.*, 467 U.S. 340, 351, 104 S.Ct. 2450, 2457, 81 L.Ed.2d 270 (1984). The presumption may be overcome, and the appropriate standard for determining whether "a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and nature of the administrative action involved." *Id.* at 345, 104 S.Ct. at 2453.

■ Section 2778(h) expressly bars judicial review of the President's (or his designee's—in this case, the Secretary of State's and/or ODTC's) designation of items as defense articles. In the case at bar, the Department of State designated the Karn diskette as a defense article by listing "cryptographic software" in Part 121 to the ITAR and then confirming that the diskette was covered by this description pursuant to the definitional provisions to the ITAR contained in § 120.4. The plaintiff argues, however, that because § 2778(a)(1) authorizes the designation of "defense articles and . . . . [t]he items so designated shall constitute the United States Munitions List," and because the bar to judicial review appearing in § 2778(h) only applies to "the designation . . . in regulations . . . of items as defense articles," judicial review is precluded only for the act of listing items as defense articles on the munitions list published in Part 121 of the ITAR. Therefore, according to the plaintiff, any interpretation and application of the descriptions on the munitions list by the agency are reviewable. *See* Plaint's Opp. at 36–37.

■ The Court finds the plaintiff's reading strained and unreasonable. It is far more reasonable to read § 2778(a)(1) and (h) to preclude judicial review for the designation of items as defense articles pursuant to the language of the munitions list and the procedures provided for interpreting the list, all set forth in the ITAR—in other words, if the defendants follow the procedures set forth in the ITAR and authorized by the AECA for designating an item as a defense article, such item is a part of the munitions list. The defendants did precisely that. Furthermore, even if the plaintiff's reading of the statute were plausible, the Court finds that any ambiguity would be dispelled by the objective of the AECA, the structure of the United States export scheme, and the nature of the plaintiff's challenge.

To parse the statute as the plaintiff suggests makes little sense in light of the objectives of the AECA. The AECA was enacted to permit the Executive Branch to control the export and import of certain items in order to further "world peace and the security and foreign policy" of the United States. 22 U.S.C. § 2778(a)(1). Designating an export such that it is subject to the AECA and the ITAR requires first describing the type of item in the regulations, and second, if asked by a potential exporter, confirming that the item in question is or is not covered by such description. The commodity jurisdiction procedure provides the latter function, as provided for explicitly both in the definitional section of the ITAR and in the munitions list with respect to cryptographic software. *See* 22 C.F.R. §§ 120.4 and 121.1, category XIII, (b)(1), Note. Determining whether an item is covered by the munitions list is critical to the President's ability to designate and control the export of those items the Executive Branch considers to be defense articles. Simply put, the Court discerns from the legislative scheme that Congress has precluded judicial review of the commodity jurisdiction procedure.

Judicial non-reviewability of the defendants' commodity control decision is also consistent with the structure of the United State's export control scheme. Items not regulated by the ITAR but which have both commercial and potential military application—"dual use" items—are regulated by the Secretary of Commerce pursuant to the Export Administration Regulations (EAR), 15 C.F.R. §§ 768–99, which were promulgated pursuant to the Export Administration Act (EAA), 50 App. U.S.C. §§ 2401–20. Like the munitions list contained in Part 121 of the ITAR, the EAR contains a description of items, the commodity control list (CCL), subject to the licensing requirements of the EAR. *See* 15 C.F.R. part 799. Similarly, the EAA also contains a judicial review prohibition. Section 2412(a) of the EAA states that "the functions exercised under this Act are excluded from the operation of [the APA.]" In a criminal appeal before the Ninth Circuit, brought by a defendant who exported laser mirrors without obtaining a license from the Secretary of Commerce pursuant to the EAA and EAR, the court held that section 2412(a) of the EAA precluded judicial review of the Secretary of Commerce's determination that the type of laser mirrors exported by the defendant were in fact covered by the language of the CCL. *See United States v. Spawr Optical Research, Inc.,* 864 F.2d 1467 (9th Cir.1988), *cert. denied,* 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989). In other words, under the EAR and EAA judicial review is precluded for the act of describing items on the CCL and for the act of determining whether an item is covered by the CCL descriptions.[12]

In addition to the obvious analogy between the schemes of the EAA and the AECA, these statutes are in fact part of a singular export scheme, in that the commodity jurisdiction procedure set forth in § 120.4 of the ITAR not only determines whether an item is a defense article covered by the munitions list, it also determines whether an item is covered by the EAR. *See* Lowell Decl., Tab

2. In fact, Part 121 of the ITAR, containing the published munitions list which the plaintiff concedes is not subject to judicial review, states the following:

NOTE: A procedure has been established to facilitate the expeditious transfer to the Commodity Control List of mass·market software products with encryption that meet specified criteria regarding encryption for the privacy of data ... Requests to transfer commodity jurisdiction of mass market software products designed to meet the specified criteria may be submitted in accordance with the commodity jurisdiction provisions of § 120.4.

22 C.F.R. § 121.1, Category XIII(b)(1). To achieve consistency between the EAA and the AECA the Court concludes that decisions made pursuant to the commodity jurisdiction procedure should not be reviewable. Furthermore, considering the deference afforded the President in matters of foreign policy, it would be strange indeed if Congress precluded judicial review of the determination that an item has merely a potential for military use (*i.e.,* subject to the commodity control list), but permitted review of the determination that an item was in fact a defense article (*i.e.,* subject to the munitions list).

The Court has reviewed House Report No. 101–296, Senate Report No. 101–173, and the Congressional Record for legislative history regarding the Anti–Terrorism and Amendments to the Arms Export Control Act of 1989, which added § 2778(h) to the AECA. The legislative history regarding § 2778(h) is scant. However, one of the stated purposes of the Act—to eliminate "overlapping standards that lead to confusion and misinterpretation," including "identifying which arms are subject to restrictions," *see* S.Rep. No. 173, 101st Cong., 1st Sess. 2 (1989); *see also* H.R.Rep. No. 296, 101st Cong., 1st Sess. 3 (1989) U.S.Code Cong. & Admin.News 1989 at 1350, 1351, 1352—further supports finding consistency between the AECA and EAA.

■ Finally, the plaintiff's challenge is not of a nature that commands a heightened

---

**12.** Based on *Dart v. United States,* 848 F.2d 217 (D.C.Cir.1988), the plaintiff contends that courts in this Circuit construe finality provisions more narrowly than the Ninth Circuit did in *Spawr.* *See* Plaint's Opp. at 41–2. This is incorrect.

*Dart* involved a facial challenge to the agency's action, which is quite different and requires greater scrutiny than the type of challenge brought in *Spawr.* *See* discussion of facial challenges, *infra.*

presumption in favor of judicial review. Courts have held that "the presumption of judicial review is particularly strong" where the plaintiff alleges that the agency facially violated its authority delegated under the statute. *Dart v. United States,* 848 F.2d 217, 223 (D.C.Cir.1988). One rationale for this general rule is that such "facial" challenges typically raise "a discrete issue, unrelated to the facts of the case, that only needs to be resolved once," and therefore, entertaining the challenge does not "open the floodgates to litigation." *Id.; see also, Bowen v. Michigan Acad. of Family Phys.,* 476 U.S. 667, 680 n. 11, 106 S.Ct. 2133, 2141 n. 11, 90 L.Ed.2d 623 (1986); *Johnson v. Robison,* 415 U.S. 361, 370, 94 S.Ct. 1160, 1167, 39 L.Ed.2d 389 (1974). Another rationale for presuming the reviewability of such facial challenges is that, "[w]hen Congress limits its delegation of power, courts infer (unless the statute clearly directs otherwise) that Congress expects this limitation to be judicially enforced." *Dart,* 848 F.2d at 223.

In the case at bar, the plaintiff's APA claim does not raise a facial challenge to the agency's action in the context of the agency's statutory authority,[13] but instead disputes whether the Karn diskette constitutes a defense article subject to the licensing restrictions of the ITAR. Permitting judicial review of the plaintiff's APA claim would in fact open the floodgates to litigation; every time a potential exporter is informed through the commodity jurisdiction procedure that the item he wishes to export (or has already exported) is designated in the munitions list, the exporter could seek judicial review of that decision.

Based on the authorities cited in the plaintiff's Opposition, the plaintiff maintains that it is incumbent upon courts to essentially torture the language of finality provisions in order to permit judicial review whenever possible. *See* Plaint's Opp. 34–38, 41–42. Each of the cases cited by the plaintiff involved either legislative history[14] or a statutory scheme[15] that raised substantial doubt as to whether Congress intended to preclude judicial review. Moreover, some of the cases often involved a facial challenge[16] to a statute or to the agency's action. Thus, the Court finds that the authorities relied upon by the plaintiff are inapposite to the circumstances presented in the present case. For the reasons discussed above (*i.e.,* the express language of the AECA, the arms export control scheme, and the nature of the plaintiff's challenge) the Court holds that Congress has barred judicial review.

## II. THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW ON THE PLAINTIFF'S FIRST AND FIFTH AMENDMENT CLAIMS.

Although the Court holds that the AECA precludes judicial review of the De-

---

13. However, the plaintiff does raise constitutional claims which the Court addresses, *infra.*

14. *See Lindahl v. Office of Personnel Mgt.,* 470 U.S. 768, 778–91, 105 S.Ct. 1620, 1626–33, 84 L.Ed.2d 674 (1985) (Court refused to *expand* preclusion of finality provision beyond that previously applied by courts for almost 30 years where legislative history of new provision acknowledged past application and failed to express disagreement or amend wording of said finality clause).

15. *See McNary v. Haitian Refugee Center,* 498 U.S. 479, 491–94, 111 S.Ct. 888, 895–97, 112 L.Ed.2d 1005 (1991) (Court read provision precluding judicial review narrowly to apply only to direct review of individual determinations regarding a type of immigration status, "rather [than reading the finality provision to apply] to general collateral challenges to unconstitutional practices and policies used by the agency in processing applications," because the broader reading would make no sense in light of other provisions in the Immigration and Naturalization Act); *Traynor v. Turnage,* 485 U.S. 535, 542–45, 108 S.Ct. 1372, 1378–80, 99 L.Ed.2d 618 (1988) (Court held that bar to judicial review of decisions of Veterans Administrator on questions of law or fact would not bar constitutional or statutory challenge to VA decision because such challenges would not disrupt statutory scheme).

16. *See Traynor,* 485 U.S. at 540, 108 S.Ct. at 1377–78 (Court permitted cases against the VA to go forward based on Rehabilitation Act of 1973 because such actions would not burden the courts or frustrate uniformity of technical and complex determinations and applications of VA policy connected with veterans' benefits decisions); *Dart,* 848 F.2d at 222–3 (Court permitted review of ALJ decision where the agency went beyond its delegated authority); *Bartlett v. Bowen,* 816 F.2d 695, 699 (D.C.Cir.1987) (Court held *constitutional* challenge to agency action not foreclosed by provision barring judicial review).

partment of State's determination that the Karn diskette is a designated defense article subject to the ITAR, the plaintiff also asserts that the regulation of the diskette violates the plaintiff's First and Fifth Amendment rights. Both parties agree that such constitutional challenges are not barred by § 2778(h). *See Webster v. Doe,* 486 U.S. 592, 602–05, 108 S.Ct. 2047, 2053–54, 100 L.Ed.2d 632 (1988). Accordingly, the Court will now proceed to address the defendants' Motion for Summary Judgment with respect to these claims.

A party is entitled to summary judgment when there are no material facts in dispute and its position is correct as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Material facts are those "facts that might affect the outcome of the suit under the governing law...." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The Court finds that there are no material facts in dispute with respect to the plaintiff's First and Fifth Amendment claims, and for the reasons set forth below, the defendants are entitled to summary judgment as a matter of law.

**A. The Court Shall Grant The Defendants' Motion For Summary Judgment On The Plaintiff's First Amendment Claim Because The Regulation Is Content–Neutral And Meets The *O'Brien* Test.**

**1. Regulation Of The Diskette Is Subject To The *O'Brien* Test Because The Governmental Interest At Stake Is Unrelated To The Content Of Any Protected Speech Contained On The Diskette.**

The plaintiff contends that the defendants' regulation of the Karn diskette [17] constitutes a restraint on free speech in violation of the plaintiff's First Amendment rights. The plaintiff argues the diskette should be considered "speech" for the purpose of First Amendment analysis because the computer language source codes contained on the diskette are comprehensible to human beings when viewed on a personal computer, because the diskette contains "comments" interspersed throughout the source code which are useful only to a human and are ignored by the computer, and because the source code and comments taken together teach humans how to speak in code.[18]

As a threshold matter, for the purpose of addressing the dispositive issue whether the regulation is justified and permissible, the Court will assume that the protection of the First Amendment extends to the source code [19] and the comments on the plaintiff's diskette.[20] The Supreme Court has de-

---

17. The defendants have regulated only the plaintiff's diskette, not the book. The Court will not address whether the defendants can regulate the book pursuant to the AECA and the ITAR because that issue is not properly before this Court.

18. The plaintiff's reliance on *Minneapolis Star & Tribune Co. v. Comm. of Revenue,* 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983), for the proposition that the diskette is a "tool of speech" which cannot be regulated, is entirely misplaced. In that case, the Supreme Court invalidated a statute that singled out publications for disparate taxation. *Id.* at 581–82, 103 S.Ct. at 1369–70. Such circumstances are simply not present in this case.

19. The Court makes no ruling as to whether source codes, without the comments, fall within the protection of the First Amendment. Source codes are merely a means of commanding a computer to perform a function.

20. The plaintiff cites Supreme Court authority holding that the teaching of a foreign language is "speech," in an apparent attempt to add some additional First Amendment protection to the diskette other than that provided for the communication of scientific or mathematical information. Whether the source code and comments convey information on speaking in a foreign language (and it is not clear that cryptography qualifies) or convey information on the science of cryptographic algorithms, the analysis is the same. The plaintiff also relies upon an unpublished Ninth Circuit opinion declaring Arizona's "English-only" statute unconstitutional. *See Yniguez v. Arizona,* 69 F.3d 920 (9th Cir.1995). *Yniguez* does not apply to the case at bar, however, because the defendants have not passed a regulation prohibiting speaking in code.

scribed the First Amendment right to free speech as that which "generally prevents the government from proscribing speech because of disapproval of the ideas expressed." *R.A.V. v. City of St. Paul,* 505 U.S. 377, 381–82, 112 S.Ct. 2538, 2542, 120 L.Ed.2d 305 (citations omitted). Assuming the source codes and comments are within the arena of protected speech, the Court must then determine the basis for the regulation at issue in this case.

■ The rationale for a regulation determines the level of scrutiny to be applied to said regulation; if the regulation is content-based, the regulation will be "presumptively invalid," whereas if the regulation is content-neutral, then the government may justify the regulation if certain other criteria are met. *Id.* at 381–402, 112 S.Ct. at 2542–54. These additional criteria—whether the regulation is (1) within the constitutional power of the government, (2) "furthers an important or substantial governmental interest," and (3) is narrowly tailored to the governmental interest—have been referred to as the *O'Brien* test after the Supreme Court upheld the government's prohibition against burning draft cards based on these criteria in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

■ The plaintiff disputes this characterization of the law, arguing that the nature of the matter regulated, (*e.g.,* whether "conduct" or "pure speech"), as opposed to the rationale for the regulation, actually dictates the level of scrutiny to be applied. The plaintiff submits that the *O'Brien* criteria are inapplicable because they apply only to the regulation of "conduct", and that the Karn diskette is "pure speech", the regulation of which should require strict scrutiny review. The Court disagrees, as the plaintiff's argument places form over substance. Pursuant to extensive First Amendment jurisprudence, the government's rationale for the regulation controls, regardless of the form of the speech or expression regulated. *See Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989) ("Time, place, and manner" restriction on music permitted where, among other things, regulation was content-neutral); *Clark v. Community of*

*Creative Non–Violence,* 468 U.S. 288, 298, 104 S.Ct. 3065, 3071, 82 L.Ed.2d 221 (1984) (Standard for evaluating expressive conduct, including requirement that regulation be content-neutral, "is little, if any, different from standard applied to time, place, or manner restrictions"); *O'Brien,* 391 U.S. at 377, 88 S.Ct. at 1679 (Government prohibition against burning of draft cards sufficiently justified if, among other things, "the governmental interest is unrelated to the suppression of free expression"). Accordingly, it is unnecessary for the Court to make any finding regarding the nature of the matter contained on the Karn diskette.

■ The government regulation at issue here is clearly content-neutral. The defendants' rationale for regulating the export of the diskette is that "the proliferation of [cryptographic hardware and software] will make it easier for foreign intelligence targets to deny the United States Government access to information vital to national security interests." Crowell Decl. at 3. The defendants are not regulating the export of the diskette because of the expressive content of the comments and or source code, but instead are regulating because of the belief that the combination of encryption source code on machine readable media will make it easier for foreign intelligence sources to encode their communications. The government considers the cryptographic source code contained on machine-readable media as cryptographic software and has chosen to regulate it accordingly.

The plaintiff does not dispute this motive for regulating the export of the diskette, but instead questions the logic of such a motive in light of the plaintiff's allegations that, without compiling the source code and without further programming, the Karn diskette does not perform a cryptographic function, and that there is no actual danger to national security because the source codes can be obtained abroad through the book or on the Internet. Such issues are not material to the determination of content neutrality. In this case, the plaintiff has not presented any evidence to suggest the bad faith of the government, or that the government's expressed motive is a pretense. Accordingly, the Court

finds that the rationale expressed by the government is content-neutral and the regulation is subject to the standards set forth by the Supreme Court in *O'Brien.*

**2. The Regulation Of The Diskette Meets The *O'Brien* Test Because It Is Within The Power Of The Government To Control The Export Of Defense Articles, It Furthers The Significant Governmental Interest Of Preventing The Proliferation Of Cryptographic Products, And It Is Narrowly Tailored To Meet That Interest.**

[redacted] As stated previously, a content-neutral regulation is justified under the *O'Brien* test if it is within the constitutional power of the government, it "furthers an important or substantial governmental interest," and "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *O'Brien,* 391 U.S. at 377, 88 S.Ct. at 1679. The plaintiff does not dispute that regulating the export of cryptographic software is within the constitutional power of the government.[21] Nor does the plaintiff expressly dispute the second requirement, that the government has an important interest at stake. The defendants have submitted evidence, which the plaintiff does not dispute, stating that the interception of communication made by foreign intelligence targets is "essential to the national defense, national security, and the conduct of the foreign affairs of the United States." Crowell Decl. at 3. In the context of this factual backdrop, the defendants have expressed the following government interest for justifying the regulation of the plaintiff's diskette: "the proliferation of cryptographic products will make it easier for foreign intelligence targets to deny the United States Government access to information vital to national security interests." Crowell Decl. at 3.

[redacted] The plaintiff argues instead that the third prong of the *O'Brien* test is not satisfied because the cryptographic algorithms contained on the Karn diskette are "already widely available in other countries [through the Internet and other sources] or are so 'weak' that they can be broken by the [National Security Agency]."[22] Plaint's Opp. 15–16. Although the plaintiff has labeled his argument as one concerning the "narrowly tailored restriction" requirement of the *O'Brien* test, the plaintiff's argument implicates the second *O'Brien* requirement by questioning whether the government has a legitimate interest at stake. Indeed, the plaintiff contends that his argument constitutes a factual dispute with the defendants, making the plaintiff's First Amendment claim inappropriate for summary judgment as a matter of law.

The Court does not agree. The plaintiff attempts to disguise a disagreement with the foreign policy judgment of the President as a factual dispute. By placing cryptographic products on the ITAR, the President has determined that the proliferation of cryptographic products will harm the United States. This policy judgment exists despite the availability of cryptographic software through the Internet and the National Security Agency's alleged ability to break certain codes. Even if this were a factual dispute, it is not one into which this Court can or will delve. The Court will not scrutinize the President's foreign policy decision. As the Supreme Court stated in *Chicago & Southern Air Lines v. Waterman SS. Corp.,* 333 U.S. 103, 68 S.Ct. 431, 92 L.Ed. 568 (1948), such decisions:

> are delicate, complex, and involve large elements of prophecy. They are and should be undertaken only by those directly responsible to the people whose welfare they advance or imperil. They are decisions of a kind for which the Judiciary has neither aptitude, facilities nor responsibility and which has long been held to belong in the domain of political power not subject to judicial intrusion or inquiry.

21. The plaintiff cannot dispute this point in good faith, as "the federal government undeniably possesses the power to regulate the international arms traffic." *United States v. Edler Indus.,* 579 F.2d 516, 520 (9th Cir.1978).

22. The plaintiff also argues that certain "hashing" algorithms, which do not encrypt at all, pose no danger to national security. The government agrees, and in fact, hashing "functions are expressly exempted from ITAR regulation." Plaint's Opp. at 32. These algorithms are only affected by the regulation because they are included for export on the same disk as the cryptographic source code algorithms.

333 U.S. at 111, 68 S.Ct. at 436. The plaintiff also suggests that the Court balance any First Amendment harms created through regulation of the diskette against the injury caused to national security if the export of the diskette were not regulated. *See* Plaint's Opp. 16. However, unlike *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 508, 89 S.Ct. 733, 737, 21 L.Ed.2d 731 (1969), where the Supreme Court applied an *ad hoc* balancing test, such a test in the case at bar would require the Court to scrutinize the actual injury to national security. Again, the Court declines to do so. *See United States v. Mandel,* 914 F.2d 1215, 1223 (9th Cir.1990) ("[W]hether the export of a given commodity would make a significant contribution to the military potential of other countries ... is a political question not subject to review to determine whether [it] had a basis in fact"); *United States v. Martinez,* 904 F.2d 601, 602 (11th Cir.1990) ("The question whether a particular item should have been placed on the Munitions List possesses nearly every trait that the Supreme Court has enumerated traditionally renders a question 'political'"). Furthermore, the plaintiff cannot genuinely dispute that, absent the restriction on the export of cryptographic products and the plaintiff's diskette, the actual number of cryptographic products [23] available to foreign intelligence sources will be greater.

Finally, the plaintiff has not advanced any argument that the regulation is "substantially broader than necessary" to prevent the proliferation of cryptographic products. *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 808, 104 S.Ct. 2118, 2130, 80 L.Ed.2d 772 (1984). Nor has the plaintiff articulated any present barrier to the spreading of information on cryptography "by any other means" other than those

containing encryption source code on machine-readable media. *Clark,* 468 U.S. at 295, 104 S.Ct. at 3070. Therefore, the Court holds that the regulation of the plaintiff's diskette is narrowly tailored to the goal of limiting the proliferation of cryptographic products and that the regulation is justified.

**3. The Court Shall Deny The Plaintiff's First Amendment Claim Regarding The "Technical Data" Provisions Of The ITAR Because The Plaintiff Does Not Have Standing And The Defendants Have Limited Their Application Of Said Provisions.**

As a last-ditch argument, the plaintiff contends that the Court should invalidate the ITAR under the First Amendment because certain provisions of the ITAR regulating the export of "technical data," as defined in 22 C.F.R. § 120.10, constitute "an unconstitutional system of vague prior restraints." The plaintiff bases his argument on internal government memoranda that express concern regarding the possible overbreadth and vagueness of said provisions.

 The plaintiff has no standing to bring this claim regarding the unconstitutionality of the "technical data" provisions.[24] The defendants have not applied the "technical data" restrictions to the plaintiff—in fact, the crux of the plaintiff's APA claim is that although the plaintiff believes the diskette is exempted from the ITAR because it is in the public domain, the defendants have arbitrarily concluded that the public domain exemption does not apply because the diskette is not "technical data." The Court will not accept the plaintiff's invitation to address the constitutionality of the "technical data" provisions of the ITAR where the plaintiff's injury is not causally connected to said provisions. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (Court held that case-or-

---

**23.** The Court makes no finding with respect to the "functionality" of the Karn diskette as a cryptographic device. The parties agree that the source codes on the diskette can be "executed to encrypt communications on a computer by: (a) writing additional instructions to the computer called 'input and output routines' ... (b) compiling the total source code into object code by using commercially available software; and (c) typing a command to the computer...." Joint St. ¶ 20. Given this stipulation, the defendants

still consider the disk as a cryptographic product; therefore, the defendants have made the policy decision that the proliferation of this type of product is harmful to the national security.

**24.** Although not raised by either party, the Court is "obliged to examined the standing" of the plaintiff to assert his claim. *Juidice v. Vail,* 430 U.S. 327, 331, 97 S.Ct. 1211, 1215, 51 L.Ed.2d 376 (1977).

controversy standing required, among other things, that the plaintiff must have suffered an injury causally connected to the challenged action of the defendant). While courts have departed from traditional rules of standing with respect to certain First Amendment claims, claims of facial overbreadth and vagueness are rarely entertained with respect to content-neutral regulations. *See Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973).

■ Furthermore, the plaintiff's overbreadth concerns are not genuine. In *United States v. Edler Indus.,* 579 F.2d 516 (1978), the Ninth Circuit addressed the argument that the definition of "technical data" in the ITAR is "susceptible to an overbroad interpretation." *Id.* at 520. The court chose to read the technical data provision narrowly to avoid finding a constitutional violation. *Id.* at 521. The Department of State has since limited its application of the provision in practice to the interpretation expressed by the court in *Edler Indus. See* Preamble to Revisions of International Traffic in Arms Regulations (Final Rule) 49 Fed.Reg. 47682, 47683 (Dec. 6, 1984). In evaluating the plaintiff's overbreadth claim, the Court " 'must . . . consider any limiting construction that a . . . court or enforcement agency has proferred.' " *Ward,* 491 U.S. at 796, 109 S.Ct. at 2756 (quoting *Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, n. 5, 102 S.Ct. 1186, 1191 n. 5, 71 L.Ed.2d 362 (1982)). Accordingly, based on the plaintiff's lack of standing, and in light of the limitations to the "technical data" provisions adopted by the Department of State, the plaintiff cannot prevail on his First Amendment claim that the ITAR is vague and overbroad.

**B. REGULATING THE EXPORT OF THE PLAINTIFF'S DISKETTE IS RATIONAL AND, ACCORDINGLY, DOES NOT VIOLATE THE SUBSTANTIVE DUE PROCESS RIGHTS GUARANTEED THE PLAINTIFF UNDER THE FIFTH AMENDMENT OF THE CONSTITUTION.**

As stated previously, § 2778(h) of the AECA precludes the APA claim asserted by the plaintiff, but it cannot bar a constitutional attack. Recognizing the significant possibility that this Court might hold the plaintiff's "arbitrary and capricious" challenge under the APA nonjusticiable, *see* Part I of this Memorandum Opinion, the plaintiff asserts the same "arbitrary and capricious" challenge under the legal theory that the defendants' actions violated his right to substantive due process as guaranteed by the Fifth Amendment. However, the plaintiff may not backdoor his APA claim through the Fifth Amendment as that would render the judicial review preclusion in § 2778(h) absolutely meaningless. *See Sylvia Develop. Corp. v. Calvert County,* 48 F.3d 810, 829 n. 7 (4th Cir.1995) ("As the courts have consistently recognized, the inquiry into 'arbitrariness' under the Due Process Clause is completely distinct from and far narrower than the inquiry into 'arbitrariness' under state or federal administrative law").

■ The substantive due process provided in the Fifth Amendment, absent the assertion of a fundamental right, merely requires a reasonable fit between governmental purpose and the means chosen to advance that purpose. *See Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 19, 96 S.Ct. 2882, 2894, 49 L.Ed.2d 752 (1976) ("Under the deferential standard of review applied in substantive due process challenges to economic legislation there is no need for mathematical precision in the fit between justification and means"). Given this "extremely limited scope of permissible judicial inquiry," *Association of Accredited Cosmetology Schools v. Alexander,* 979 F.2d 859, 866 (D.C.Cir.1992), the plaintiff's due process claim lacks any merit. The government clearly has an interest in preventing the proliferation of cryptographic software to foreign powers, and the regulation of the export of the cryptographic software is a rational means of achieving that goal. The Court will not substitute its policy judgments for that of the President, *see Bowen v. Gilliard,* 483 U.S. 587, 597, 107 S.Ct. 3008, 3015, 97 L.Ed.2d 485 (1987), especially in the area of national security. *See Martinez,* 904 F.2d at 602.

Likewise, the regulation of the plaintiff's diskette as cryptographic software is rational, even when considered in conjunction with the defendants' decision not to subject the book *Applied Cryptography* to the ITAR. As stated by the plaintiff in his commodity jurisdiction application for *Applied Cryptography*, the book contains no machine-readable media, while the diskette is precisely that. *See* Lowell Decl., Tab 4. Although Part Five of the book could be placed on machine readable media through the use of optical character recognition technology or through direct typing, the plaintiff concedes that using the source code in Part Five of *Applied Cryptography* to encode material takes greater effort and time than using the Karn diskette. Karn Decl. ¶¶ 10–12. Accordingly, treating the book and diskette differently is not in violation of the plaintiff's substantive due process rights. Finally, to the extent that the plaintiff's substantive due process rights require the Court to review the defendants' interpretation of the public domain exemption to the ITAR, the Court finds the defendants' interpretation reasonable as a matter of law.

## CONCLUSION

For the reasons discussed above, the Court shall dismiss the plaintiff's APA claim, and the defendant is entitled to summary judgment on the plaintiff's First and Fifth Amendment claims. The Court shall issue an Order of even date herewith consistent with the foregoing Opinion.