Edward M. Joffe, Miami, FL, argued the cause for appellant. With him on the briefs were Gilbert L. Sandler and Arthur K. Purcell, Miami, FL. Ronald Wayne Gerdes, Washington, DC, and Peter W. Fudali, Miami, FL, entered an appearance.

David B. Orbuch, Asst. U.S. Atty., Washington, DC, argued the cause for appellees. With him on the brief were Eric H. Holder, Jr., U.S. Atty., John D. Bates, R. Craig Lawrence, and Jeffrey T. Sprung, Asst. U.S. Attys., Washington, DC.

## MIAMI FREE ZONE CORPORATION, INC., Appellant,

v.

## FOREIGN TRADE ZONES BOARD, United States Department of Commerce, United States of America, Appellees.

No. 92–5380.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 4, 1994.

Decided April 15, 1994.

Before: SILBERMAN, BUCKLEY, and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Appellant, a foreign trade zone operator who wishes to challenge the Board's grant of

another zone application in its geographic area, seeks reversal of the district court's decision that it did not have jurisdiction to review the Board's actions, 803 F.Supp. 442. We agree with the district court, and the Federal Circuit, that exclusive jurisdiction lies in the Court of International Trade and therefore affirm.

## I.

The Foreign Trade Zones Act, 19 U.S.C. §§ 81a–81u (1988), created the Board to review applications for the establishment, operation, and maintenance of general purpose foreign trade zones. The zones are located in ports of entry within the geographic boundaries of the U.S. but are not considered to be part of U.S. territory for customs purposes. Foreign goods may be introduced into the zones without the immediate payment of duties and with minimal paperwork required by the Customs Service. 19 U.S.C. § 81c(a) (1988). The zones thus permit businesses to mitigate their duty liability in several respects. Foreign goods that are introduced into the zones and then shipped to another country are not subject to U.S. duties. *Id.* And the zones often serve as manufacturing centers, wherein foreign goods are further processed or components are assembled before being imported into the U.S. The benefits of this arrangement are obvious in instances of an inverted tariff, where duties on the various components of a good are higher than those on the finished product.

Each port of entry is automatically entitled to one general purpose foreign trade zone upon meeting certain basic requirements. 19 U.S.C. § 81b(b) (1988). In addition to this zone, the Board may authorize additional zones in each port if it determines that the existing ones do not adequately serve the convenience of commerce. *Id.*

Appellant operates a foreign trade zone at Miami International Airport, located outside the city of Miami in Dade County, Florida. In July, 1990, Wynwood Community Economic Development Corporation (Wynwood) filed an application with the Board for an additional foreign trade zone in the Miami area to be located in the Port of Miami to service all-ocean shippers currently not served by appellant at its airport location. Wynwood also emphasized the need for the new zone as part of the City's efforts to encourage economic development in the Port of Miami area. At the recommendation of a special committee, the Board approved Wynwood's application for an additional zone on November 18, 1991.

Appellant filed this action in the district court under the Administrative Procedure Act challenging the Board's approval of Wynwood's application. Upon the Board's motion, the district court dismissed the complaint for lack of subject matter jurisdiction. The court noted that the Foreign Trade Zones Act grants jurisdiction to review *revocation* decisions by the Board to the court of appeals for the circuit where the revoked zone is located, 19 U.S.C. § 81r(c) (1988), but held that the provision does not preclude APA review of other Board actions. The court did agree, however, with the Board that the Court of International Trade (CIT) has exclusive jurisdiction under 28 U.S.C. § 1581(i) (1988)[1] to review the Board's actions. While declining to define the precise scope of the CIT's jurisdiction, the court held that "at the very least" the Act falls within paragraphs (1), (2), and (4) of subsection 1581(i). Such a grant of exclusive jurisdiction to the CIT divests the district court of its jurisdiction under 28 U.S.C. § 1331 (1988)

---

1. That section provides in relevant part:
   [T]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—
   (1) revenue from imports or tonnage;
   (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

   (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
   (4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

to entertain APA challenges to agency actions.

## II.

Appellant argues on appeal that the district court erred in construing section 1581(i) to grant the CIT exclusive jurisdiction over disputes arising from the Act. The question raised is a close one, as reflected by the different opinions of courts that have confronted the issue. In *Conoco, Inc. v. United States Foreign–Trade Zones Bd.*, 790 F.Supp. 279, 289 (Ct. Int'l Trade 1992) and *Phibro Energy, Inc. v. Franklin*, 822 F.Supp. 759, 764 (Ct. Int'l Trade 1993), the CIT held that it does not have jurisdiction under section 1581(i) to review actions by the Board.[2] While recognizing that the CIT is "best able to uniformly interpret the FTZ laws and develop a consistent methodology for reviewing FTZ Board decisions," *Phibro*, 822 F.Supp. at 765, the court determined that the Act is not a law "providing for" revenues or tariffs, or the administration thereof and therefore is not encompassed by section 1581(i). *See id.* at 764. On appeal, the Federal Circuit reversed. *See Conoco, Inc. v. United States Foreign–Trade Zones Bd.*, 18 F.3d 1581, 1590 (Fed.Cir.1994). Since "[t]he foreign trade zones arise under the laws designed to deal with revenue from imports," *id.* at 17, and "there is little ground for dispute as to what is within the concept of 'revenue from imports,' or what 'administration and enforcement' means with regard to matters relating to revenue from imports," *id.* at 1589, the CIT has exclusive jurisdiction under section 1581(i)(1), (4). *See id.* at 1590, n. 24.

The difficulty with this formulation, as appellant points out, is that section 1581(i) grants the CIT exclusive jurisdiction over actions arising from laws *providing for*—not "designed to deal with" or "relating to"—revenue from imports. The Foreign Trade Zones Act does not provide for revenue from imports, 28 U.S.C. § 1581(i)(1) (1988), but rather, if anything, non-revenue from imports since companies are permitted to escape certain duty liability. The Board would alternatively rest on paragraph (2), which grants jurisdiction over laws providing for "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than raising of revenue." 28 U.S.C. § 1581(i)(2) (1988). But this argument suffers from the same analytical flaw. The Act creates an exemption from tariffs and duties imposed by other statutes and is not a law providing for tariffs and duties within the meaning of paragraph (2).

Paragraph (4), however, is more expansive. That provision refers to laws providing for "administration and enforcement *with respect to* matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section." 28 U.S.C. § 1581(i)(4) (1988) (emphasis added). Under this formulation, the Act could be characterized as a statute providing for administration with respect to matters referred to in paragraph (2). While "providing for tariffs" may not include providing for exemptions from tariffs, "providing for administration with respect to tariffs ... for reasons other than the raising of revenue" seems to sweep more broadly and literally to encompass statutes, such as the Foreign Trade Zones Act, that contemplate re-

---

**2.** In response to appellant's accusation that the Board was adopting contradicting positions before the CIT and the district court, the Board argues that the Act's provision for judicial review of its revocation decisions, 19 U.S.C. § 81r(c) (1988), precludes APA review of any other Board action. We do not think much of this contention, which seems to rest on an attenuation of the maxim *expressio unius est exclusio alterius.* The maxim presumes that the legislature has spoken on an entire topic, usually by specifically listing its components, but has chosen to remain silent on a particular subset of the topic, leading to the inference that silence implies exclusion. *See* 2A NORMAN J. SINGER, SUTHERLAND ON STATUTES AND STATUTORY CONSTRUCTION, §§ 47.23, 47.25, at 217, 234

(5th ed. 1992). Here, Congress has spoken to only one particular instance of judicial review, and the Board asks us to infer from the general silence that Congress meant to exclude judicial review of *all* other actions. Such an inference strains the logic of the maxim and, more important, contradicts the traditional presumption of judicial review of agency action. *See Traynor v. Turnage*, 485 U.S. 535, 542, 108 S.Ct. 1372, 1378, 99 L.Ed.2d 618 (1988) (citing *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670, 106 S.Ct. 2133, 2135, 90 L.Ed.2d 623 (1986); *Abbott Lab. v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967)).

laxation of tariffs and duties in order to achieve non-revenue goals such as the promotion of international commerce.[3] After all, for those goods introduced into the zones and subsequently imported into the U.S., the effect of the Act is not to exempt them from duties but to prescribe *when* and *how much* duties are to be paid on them.

This reading finds some support in our prior attempt to define the scope of paragraph 1581(i)(4). In *Coalition to Preserve Integrity of Amer. Trademarks v. United States,* 790 F.2d 903, 906 (D.C.Cir.1986), *aff'd in part sub nom. K Mart Corp. v. Cartier, Inc.,* 485 U.S. 176, 191, 108 S.Ct. 950, 960, 99 L.Ed.2d 151 (1987), we faced a challenge to the jurisdiction of the district court to review a regulation of the Customs Service permitting the importation of certain "gray-market" goods. It was argued that since an administrative decision prohibiting the importation of these goods could be "protested" under the Tariff Act, exclusive jurisdiction lay in the CIT by virtue of paragraph 1581(i)(4) for the administration of matters referred to in subsection 1581(a)—which grants exclusive CIT jurisdiction over "any civil action commenced to contest the denial of a protest...." We rejected the argument—which had been adopted by the Federal Circuit, *see Vivitar Corp. v. United States,* 761 F.2d 1552, 1560 (Fed.Cir.1985), *cert. denied,* 474 U.S. 1055, 106 S.Ct. 791, 88 L.Ed.2d 769 (1986)—that

this language encompasses all protestable *subject matters* and stated that "a sound reading indicates that the 'matter[ ] referred to' in Section 1581(a) is the denial of protests, *or simply protests." Coalition to Preserve,* 790 F.2d at 906 (emphasis added). The Supreme Court agreed: "The 'matte[r] referred to' in § 1581(a) is 'the denial of [a] protes[t],' or *at the very broadest, 'a protest.'"* *K Mart,* 485 U.S. at 190, 108 S.Ct. at 960 (emphasis added). The important point is that even though we rejected the Federal Circuit's broad reading of the word "matter" to encompass importations that, had they been excluded, could have been the subject of protests, we recognized that a "matter" under paragraph 1581(i)(4) could be somewhat broader than subsection 1581(a)—which speaks only of *denial of* protests—and could therefore include laws which governed protests as well as the denial of such. The same logic suggests, at least, that the matter referred to in paragraph 1581(i)(2) encompasses an exemption from tariffs and duties rather than only the provision therefor.

To be sure, that reading is not the obvious one, but certainly now that the Federal Circuit has decided that exclusive jurisdiction lies in the CIT and given the value of uniformity in judicial review of these matters, we think the better course is to follow our sister circuit and not create a circuit conflict.[4]

\*      \*      \*      \*      \*      \*

3. Appellant places much emphasis on the legislative history of both section 1581 and the Foreign Trade Zones Act, arguing that the former grants jurisdiction only over import-related transactions while the latter deals primarily with stimulating exports. *Compare* H.R.REP. No. 1235, 96th Cong.2d Sess. 33, *reprinted in* 1980 U.S.CODE CONG. & ADMIN.NEWS 3729, 3745 (Section 1581(i) grants the CIT "jurisdiction over those civil actions which arise directly out of an import transaction and involve one of the many international trade laws.") *with* S.REP. No. 905, 73d Cong., 2d Sess. 2 (1934) (A foreign trade zone "aims to foster the dealing in foreign goods that are imported [into the zone], not for domestic consumption, but for reexport to foreign markets and for conditioning, or for combining with domestic products previous to export."). There is little to this argument, since in practice approximately 87% of goods introduced into the zones are subsequently imported into the U.S. *See* 53RD ANNUAL REPORT OF THE FOREIGN-TRADE ZONES BOARD TO THE CONGRESS OF THE UNITED STATES, Appendix D at 20 (1991). More important, what mat-

ters under our analysis is not whether the goods are ultimately exported or imported, but whether the Act—by granting an exemption from tariffs and duties for goods initially introduced into the zones—provides for the administration of such tariffs and duties.

4. The Board contends in the alternative that jurisdiction over this case lies exclusively in the Court of Appeals for the Eleventh Circuit, since that court has jurisdiction to review revocation actions by the Board under 19 U.S.C. § 81r(c) (1988) and "any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the *exclusive* review of the Court of Appeals." *Telecommunications Research & Action Ctr. v. FCC,* 750 F.2d 70, 75 (D.C.Cir.1984). It is urged that this suit might affect the Eleventh Circuit's future jurisdiction and therefore could only be entertained by that court.

We think this argument is far fetched. This case concerns the *grant* of an application, and the prospect that there will be a subsequent

Accordingly, we affirm the decision of the district court.

*So Ordered.*

appeal to the Eleventh Circuit challenging the Board's *revocation* of this or another zone is entirely speculative. And the legal standard governing this case—whether existing zones "will not adequately serve the convenience of commerce," 19 U.S.C. § 81b(b) (1988)—is wholly unrelated to the Board's revocation standard, which requires "repeated willful violations" of the Act by the grantee. 19 U.S.C. § 81r(a) (1988).