**INTERNATIONAL LABOR RIGHTS FUND, et al., Plaintiffs,**

v.

**George W. BUSH, President of the United States, et al., Defendants.**

No. 03–1316 (RJL).

United States District Court, District of Columbia.

Aug. 18, 2004.

Terry Collingsworth, International Labor Rights Fund, Washington, DC, for Plaintiffs.

Ori Lev, United States Department of Justice, Washington, DC, for Defendants.

### MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Before the Court is the defendants' motion to dismiss for lack of subject matter jurisdiction, and standing. The plaintiffs in this case seek to challenge, under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq., and section 307 of the Tariff Act of 1930, 19 U.S.C. § 1307 ("Section 307"), the actions of the Commissioner of Customs and Border Protection with regard to cocoa imported to the United States from Cote d'Ivoire. The defendants, George W. Bush, President of the United States, Tom Ridge, Secretary of the U.S. Department of Homeland Security, Robert Bonner, Commissioner of Customs and Border Protection ("the Commissioner"), Michael Garcia, Assistant Secretary of Homeland Security for the Bureau of Immigration and Customs ("BICE"), and the U.S. Department of Homeland Security ("the government"), move for dismissal of the complaint on the grounds that the Court of International Trade ("CIT") has exclusive jurisdiction over the plaintiffs' claims and the plaintiffs lack Article III standing to bring this action. As the Court finds that the CIT has exclusive jurisdiction over this action un-der 28 U.S.C. § 1581(i)(3), it will GRANT the government's motion and dismiss the plaintiffs' complaint for lack of subject matter jurisdiction.

### Background

#### I. Statutory Background: Section 307 of the Tariff Act of 1930 (19 U.S.C. § 1307)

Section 307 of the Tariff Act of 1930, 19 U.S.C. § 1307, provides in relevant part that:

> All goods...mined, produced, or manufactured wholly or in part in any foreign country by [ (I) ] convict labor or/and [ (ii) ] forced labor or/and [ (iii) ] indentured labor under penal sanctions shall not be entitled to entry at any of the ports of the United States, and the importation thereof is hereby prohibited...

19 U.S.C. § 1307. However, where such goods "are not mined, produced, or manufactured in such quantities in the United States as to meet the consumptive demands of the United States[,]" this prohibition is not applicable. *Id.*

Under Section 307, the Secretary of the Treasury is authorized to promulgate "such regulations as may be necessary for the enforcement of this provision." 19 U.S.C. § 1307. Pursuant to this authority, the Secretary of the Treasury issued regulations that provide, *inter alia*, that any person who believes that "merchandise produced in the circumstances mentioned [in Section 307] is being, or is likely to be, imported into the United States and...that merchandise of the same class is being produced in the United States in such quantities as to meet the consumptive demands of the United States may communicate his belief to any port director or the Commissioner of Customs." 19 C.F.R. § 12.42(b). Upon receipt of information submitted in compliance with the regula-

tions, "the Commissioner will cause such investigation to be made as appears to be warranted by the circumstances of the case..." 19 C.F.R. § 12.42(d), and if the Commissioner finds that the information available "reasonably but not conclusively indicates that merchandise within the purview of [S]ection 307 is being, or is likely to be, imported, he will promptly advise all port directors accordingly..." 19 C.F.R. § 12.42(e).

## II. Factual Background

The plaintiffs in this case are an advocacy organization (International Labor Rights Fund ("ILRF")), a human rights organization (Global Exchange), and an association of wholesalers, retailers, and producers of "fair trade" goods, including cocoa (Fair Trade Federation ("FTF")). They challenge the government's failure to commence an investigation and enforcement action in light of allegations of forced child labor in the cocoa industry in Cote d'Ivoire.

According to the plaintiffs, in May 2002, ILRF sent an independent investigator to Cote d'Ivoire, the largest exporter of cocoa in the world, to verify what the plaintiffs believed were well-documented reports of "pervasive use of child labor on cocoa plantations..." Amend. Compl. ¶¶ 8, 9, 11. The plaintiffs allege that through extensive meetings and interviews with government officials, industry representatives, cocoa planters, and human rights attorneys, the investigator verified that during the busy season, the demand for labor causes cocoa planters to "buy" children from "labor brokers." Id. at ¶ 12.

On May 30, 2002, ILRF hand-delivered a letter to the Commissioner, pursuant to 19 C.F.R. § 12.42(b). Amend. Compl. ¶ 49. The letter communicated an evidentiary basis for the ILRF's belief that cocoa imported from Cote d'Ivoire is produced, in part, by forced child labor. Id. at ¶ 50.

The letter also requested that the Customs Service immediately initiate an investigation and enforcement action under Section 307 of the Tariff Act, pursuant to the Customs Service regulations, into all cocoa entering the U.S. from Cote d'Ivoire. Id. at ¶ 49.

On June 30, 2002, Global Exchange, along with twenty-six other organizations, sent a letter to Paul O'Neill, then Secretary of the Treasury, urging him to take immediate action to prohibit the importation of cocoa produced by forced child labor. Amend. Compl. ¶ 52. On April 9, 2003, ILRF sent another letter to the Commissioner, requesting clarification on "how the important objectives of enforcing the prohibition on the importation of goods tainted by forced child labor would be carried out under the new reorganization." Id. at ¶ 53.

In April 2003, ILRF again sent its investigator to West Africa, who observed that forced child labor remained "a pervasive problem." Amend. Compl. ¶ 54. On May 15, 2003, the ILRF sent another letter to the Commissioner setting forth new evidence of forced child labor on cocoa plantations in Cote d'Ivoire and registering a complaint that no action had been taken by the Customs Service. Id. at ¶ 55. The plaintiffs allege that as of the date of their Amended Complaint, the agency has taken no investigatory or enforcement action. Id. at ¶ 56. The unreasonable delay in investigating cocoa imported from Cote d'Ivoire, the plaintiffs assert, has caused "millions of dollars' worth of cocoa produced by forced child labor to be imported into the U.S. to the detriment of those domestic importers who observe the law..." Id. at ¶ 61.

Based on these facts, the plaintiffs seek declaratory and injunctive relief on the grounds that the agency's failure to commence an investigation and enforcement

action violates § 706(1) of the APA. 5 U.S.C. § 706(1).

The government moves for dismissal of this action for lack of subject matter jurisdiction and for lack of standing on the part of the three plaintiffs. Specifically, the government argues that this Court lacks subject matter jurisdiction because Section 307 of the Tariff Act falls within the exclusive jurisdiction of the Court of International Trade under 28 U.S.C. § 1581(i)(3) and as a result of the Supreme Court's interpretation of the reach of this provision in *K mart v. Cartier, Inc.*, 485 U.S. 176, 182–83, 108 S.Ct. 950, 99 L.Ed.2d 151 (1988). For the following reasons, the Court agrees and finds that it lacks jurisdiction over this action.

### Discussion

■ The Court will only dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994). However, even if the Court accepts as true all of the factual allegations set forth in the complaint, *Doe v. United States Dept. of Justice*, 753 F.2d 1092, 1102 (D.C.Cir. 1985), and construes the complaint liberally in favor of the plaintiff, *Schuler v. United States*, 617 F.2d 605, 608 (D.C.Cir.1979), it "need not accept inferences drawn by [the] plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint." *Kowal*, 16 F.3d at 1276.

■ It is the plaintiff's burden of persuasion to establish the existence of subject matter jurisdiction by a preponderance of the evidence. *Thompson v. Capitol Police Board*, 120 F.Supp.2d 78, 81 (D.D.C.2000). Where a motion to dismiss presents a dispute over the factual basis of the court's subject matter jurisdiction, the Court "may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant" and therefore "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C.Cir.2000); *In re Swine Flu Immunization Products Liability Litigation*, 880 F.2d 1439, 1442–43 (D.C.Cir.1989).[1]

The government moves for dismissal of this action for lack of subject matter jurisdiction under 28 U.S.C. § 1337(c) and 28 U.S.C. § 1581(i)(3), which address federal district court and the Court of International Trade ("CIT") jurisdiction. Section 1337(c) of Title 28 of the United States Code provides that "[t]he district courts shall not have jurisdiction under this section of any matter within the exclusive jurisdiction of the Court of International Trade..." 28 U.S.C. § 1337(c). Section 1581(i)(3) sets forth the exclusive jurisdictional grant of the CIT, and provides in relevant part:

[T]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—...

(3) embargoes or other quantitative restrictions on the importation of mer-

---

1. Rule 12(b) of the Federal Rules of Procedure otherwise requires that a motion to dismiss be considered according to summary judgment standard if the movant submit matters outside of the pleadings that are not excluded by the Court. Fed.R.Civ.P. 12(b), 56; *see also IMS v. Alvarez*, 129 F.3d 618, 619 n. 1 (D.C.Cir.1997).

chandise for reasons other than the protection of the public health or safety[.] 28 U.S.C. § 1581(i)(3).

 Thus, the question before the Court is whether the plaintiffs' action "arise[s] out of any law" providing for an "embargo," as set forth in 28 U.S.C. § 1581(i)(3). For the following reasons, the Court finds that the plaintiffs' claims fall within the exclusive jurisdiction of the CIT because they "arise out of" Section 307 of the Tariff Act, which expressly provides for embargoes of goods produced from forced labor.

Although the plaintiffs strenuously argue that "[t]his case is not unlike countless APA cases brought here in the District Court" and that their claims do not seek an embargo, or any quantitative restriction on any import of any type, Pl. Opp. 13, they cannot escape the plain fact that the substantive law giving rise to their claims is Section 307. Indeed, the "statutory and regulatory framework" section of the plaintiffs' Amended Complaint focuses solely on Section 307 and its implementing regulations. Amend. Compl. ¶¶ 2–7. Furthermore, any determination of the government's liability under the APA for failure to engage in an investigation or enforcement action would require an interpretation of the scope and application of Section 307 and its regulations. Thus, given the obvious conclusion that the plaintiffs' claims "arise out of" Section 307, the Court must next determine whether Section 307 of the Tariff Act of 1930 provides for an "embargo" that would fall within the CIT's exclusive jurisdiction under 28 U.S.C. § 1581(i)(3). Based on the Supreme Court's interpretation of the term "embargoes," the plain language of Section 307, and previous cases brought before the CIT, the Court readily concludes that the

plaintiffs' claims properly fall within the CIT's exclusive jurisdiction.

In *K Mart v. Cartier*, the Supreme Court interpreted the term "embargoes," as set forth under 28 U.S.C. § 1581(i)(3), in the context of a different provision of the Tariff Act of 1930, section 526(a).[2] 485 U.S. 176, 184, 108 S.Ct. 950, 99 L.Ed.2d 151 (1988). The Supreme Court held that an "embargo" is a "[g]overnment order prohibiting commercial trade with individuals or businesses of other nations...[a] policy which prevents goods from entering a nation" and which "may be imposed on a product or on an individual country." *Id.* It further stated that it had "discovered no evidence that Congress intended to constrain the ordinary meaning of the word 'embargoes' to mean 'embargoes that are grounded in trade policy.'" *Id.* However, the Supreme Court did find that the provision at issue in that case did not provide for an "embargo" because it "merely provides a mechanism by which a private party might, at its own option, enlist the Government's aid in restricting the quantity of imports in order to enforce a private right." *Id.* at 185, 108 S.Ct. 950.

In contrast to the provision of the Tariff Act at issue in *K Mart*, Section 307 expressly "provides for" an "embargo" under 28 U.S.C. § 1581(i)(3), as defined by the Supreme Court. The plain language of Section 307 states that goods produced in a foreign country as a result of forced or convict labor "shall not be entitled to entry at any of the ports of the United States, and the importation thereof is hereby prohibited." 19 U.S.C. § 1307. Section 307 thus sets forth a policy that may be invoked to prevent goods from entering the country. Unlike the provision at issue in *K Mart*, Section 307 and its implementing

---

2. Section 526(a) of the Tariff Act of 1930 prohibits importation of merchandise of foreign manufacture bearing a trademark unless written consent from the trademark owner is produced at the time of entry. 19 U.S.C. § 1526(a).

regulations provide a framework for the Customs Service and its branches to prohibit the entry of goods. Although private parties may provide information to the government with regard to goods suspected to be the product of forced labor, the Commissioner retains sole authority to make a binding determination. 19 C.F.R. §§ 12.42(e), (f); *see also* Def. Reply 14. Thus, applying *K Mart*, the Court finds that the plain language of Section 307 "provides for" an "embargo." [3, 4]

Moreover, that the CIT has previously exercised jurisdiction over Section 307 cases also supports the Court's finding that the plaintiffs' action falls within the CIT's exclusive jurisdiction. *See McKinney v. U.S. Dep't of Treasury*, 614 F.Supp. 1226 (C.I.T.1985); *China Diesel Imports, Inc. v. United States*, 855 F.Supp. 380 (C.I.T.1994). In *McKinney v. U.S. Dep't of Treasury*, the CIT considered claims under Section 307 against the Commissioner of Customs with regard to the importation of goods allegedly produced as a result of forced labor in the Soviet Union. *Id.* at 316, 614 F.Supp. 1226. *China Diesel Imports*, another case brought before the CIT, involved a Section 307 challenge to a Customs Service determination that entry should be denied for diesel engines

manufactured in China. 855 F.Supp. at 516–17.

Finally, the D.C. Circuit has previously recognized the "value of uniformity" in judicial review of actions that might implicate the CIT's exclusive jurisdiction. *Miami Free Zone Corp., Inc. v. Foreign Trade Zones Board*, 22 F.3d 1110, 1113 (D.C.Cir. 1994). In *Miami Free Zone*, the D.C. Circuit affirmed the district court's finding that the CIT had exclusive jurisdiction, even thought it concluded that the case was a "close one." *Id.* at 1112. In this case, the Court finds that both the statutory language of Section 307 and previous precedent strongly support a finding of exclusive CIT jurisdiction. This action thus plainly belongs before the CIT. Neither the interest in uniformity of judicial review, nor Congress' intent to reserve certain cases for the specific expertise of the CIT, would be served by retaining jurisdiction over the plaintiffs' claims. Accordingly, the Court will dismiss this action for lack of subject matter jurisdiction. As the Court lacks subject matter jurisdiction, it declines to address the governments' arguments with regard to the plaintiffs' standing to bring this action.

---

**3.** The plaintiffs respond that they do not seek an embargo and that "[t]he instant action is not one arising from an import transaction" requiring the CIT's expertise. Pl. Opp. 15. However, the proper focus of an analysis of jurisdiction under 28 U.S.C. § 1581(i)is the *law* upon which the plaintiffs' action is based, and whether that law (rather than the specific claims set forth by the plaintiff) provides for an embargo. *Cf. International Labor Rights Education and Research Fund v. Bush*, 954 F.2d 745, 747 (D.C.Cir.1992) ("*ILRERF*") (Henderson, J., concurring) (evaluating under § 1581(i)(2) whether the plaintiff's claims "arise out of the tariff and international trade laws"). Moreover, the term "providing for" should be construed broadly to encompass actions "relating to" embargoes, as the plaintiffs' claims clearly do.

**4.** In addition to the plain language of Section 307, Congress' exclusion of another Tariff Act provision from the CIT's exclusive jurisdiction also supports the Court's analysis, *expressio unius est exclusio alterius. See, e.g., Independent Ins. Agents of America, Inc. v. Hawke*, 211 F.3d 638, 644 (D.C.Cir.2000) (discussing the canon of statutory interpretation, "mention of one thing implies the exclusion of another thing"). Section 1581(j) of Title 28 expressly excludes section 305 of the Tariff Act from the CIT's jurisdiction, but does not reference any other provision of the statute, suggesting that Congress reviewed the Tariff Act and determined that actions arising from other Tariff Act provisions might fall within the CIT's jurisdiction.

### ORDER

For the reasons set forth above, it is this 18th day of August, 2004, hereby **ORDERED** that the defendant's motion to dismiss for lack of subject matter jurisdiction [# 3] is **GRANTED**; and it is further

**ORDERED** that the above-captioned action is dismissed.

**SO ORDERED.**